# Highland Avenue & Belt Railroad Co. v. Swope.

*Action against Railroad Company for Personal Injuries Resulting from a Collision.*

1. *Action against railroad company; liability for injury resulting from collision; sufficiency of complaint.*—A complaint against a railroad company, which charges that plaintiff was a passenger upon a train using a track which approached and crossed that of defendant, and that a collision occurred at such crossing between said train and a train being run and operated upon defendant's track with defendant's knowledge and consent, and that such collision was the result of negligence on the part of those in charge of the train, sufficiently charges negligence for which the defendant is responsible, and shows lawful possession of the track by the train upon which plaintiff was riding.

2. *Same; same; alternative averments of negligence.*—In such case, a count in the complaint which avers that the persons in charge of such train, with the consent of the defendant, after discovering plaintiff's peril, failed to give the usual and proper signals, which would have enabled the train on which the plaintiff was riding to avoid the col-

[Highland Avenue & Belt Railroad Co. v. Swope.]

lision, or would have enabled plaintiff to have escaped from the impending danger, is not objectionable upon the ground that it charges negligence in the alternative.

3. *Same; defective plea.*—In such a case, where some of the counts of the complaint charge that the negligence consisted in failing to give signals necessary to avoid a collision, a plea alleging that the persons who were operating the train alleged to have done the injury were operating it without the consent of the defendant, and which at the same time undertakes to exculpate those in charge of the train, by alleging that such persons had done all in their power to stop the train before they saw or could have seen the danger, and yet fails to aver that the injuries to the plaintiff would not have been avoidsd by the giving of signals, is insufficient and presents no defense to the action.

4. *Same; justification by belief in method employed to prevent injury; sufficiency of plea.*—The mere belief of those in charge of a train that is about to collide with another, that they have pursued the best course to avoid the collision does not, of itself, excuse; but the belief to justify persons in charge of such train must be based on such a state of facts as would induce a reasonably prudent person, similarly situated, and having reasonable skill for such position, to believe, in the exercise of such skill and having regard for the surroundings, that the course adopted was the proper one to pursue; and, therefore, a plea which avers that the engineer who had charge of the engine, which was about to collide with another train, believed that the efforts which he made and continued to make would be effectual to stop the train and prevent any collision, and he believed that no signals he could give would be effectual to enable the train upon which the plaintiff was riding or plaintiff to get out of the way, is defective and presents no defense.

5. *Same; ownership and operation of railroad; liability for injury.* In an action against a railroad company to recover damages for personal injuries, where it is shown that the defendant, owning a railroad and the rolling stock and other appliances used in operating said railroad, permitted one of its trains to be run over and upon its said railroad by persons to whom the management and control thereof had been committed by defendant, and that the plaintiff was a passenger on a train being operated and run by another company upon a track used by it, and that the injury complained of resulted from a collision of the defendant's train with the train on which the plaintiff was a passenger, at the point where said tracks approached or crossed each other, there is shown such a relation of the defendant to the train alleged to have done the injury. as to render the defendant responsible for the negligence of those operating it.

6. *Same; admissibility of evidence.*—In an action against a railroad company to recover personal injuries received by the plaintiff in a collision by a train on the defendant's road with the train upon which the plaintiff was a passenger, where a count avers negligence

[Highland Avenue & Belt Railroad Co. v. Swope.]

in the management and running of defendant's train, evidence as to whether or not the engineer on the defendant's train threw sand under the wheels of the locomotive, is admissible.

7. *Same, simple negligence; averments of complaint.*—In an action against a railroad company to recover for personal injuries, a complaint which avers merely the failure of those in charge of the defendant's train to exercise reasonable care after the discovery of peril, so as to prevent the injuries complained of, charges simple negligence merely.

8. *Same; constituents of willfull and wanton negligence; charge to the jury.*—To constitute willful and wanton negligence, there must be a purpose or design to inflict the injury, or a consciousness at the time that the act done or committed will probably or naturally result in injury; and a charge which instructs the jury that if, after discovering the peril to plaintiff, the defendant's engineer failed to use all the means in his power known to successful engineers to prevent the injury, he would be guilty of wanton negligence, if by the use of such means he could have avoided the injury, is erroneous.

9. *Same; general affirmative charge; when properly refused.*—In an action against a railroad company to recover damages for personal injuries where the complaint contains several counts, charging negligence, and there is evidence tending to support each of the counts of the complaint, the general affirmative charge requested by the defendant in reference to each of such counts, is properly refused.

APPEAL from the Circuit Court of Jefferson.
Tried before the Hon. LEROY F. BOX.

This action was brought by the appellee, Matilda J. Swope, against the Highland Avenue & Belt Railroad Company, to recover damages for personal injuries suffered by the plaintiff while a passenger on one of the trains being operated by the Birmingham Railway & Electric Company, with which train one of the trains of the defendant company collided, from the result of which collision the personal injuries were inflicted. The substance of the counts of the complaint as to which the court did not give the general affirmative charge for the defendant are sufficiently stated in the opinion. To each of these counts the defendant separately demurred upon the following grounds: 1. It is not alleged in said count that the train on the defendant's road was being operated by the defendant or by the defendant's agents or servants. 2. It is not alleged in said count that the train on defendant's road was being operated by defendant or under its authority. 3. It is not averred that the track of defendant crossed the track

19

[Highland Avenue & Belt Railroad Co. v. Swope.]

of any other railroad at the point where the collision occurred. 4. It is not averred to whom the track belonged which was being used by the train of the Birmingham Railway & Electric Company. 5. The said count shows no obligation or duty on the part of the defendant to plaintiff in the management of its train which it violated. 6. Said count shows no duty or obligation on the part of the defendant to plaintiff in the management of its train which it violated. 7. Said count does not allege any negligence for which this defendant is chargeable. 8. By said count it is attempted to allege the negligence in the alternative. 9. By said count defendant is not informed whether the alleged negligence was in the management or running of the train. 10. There are no facts alleged which show any negligence for which defendant is chargeable. 11. It is not averred that the whistle was not blown or the bell was not rung at short intervals while running. 12. It is not shown how or in what manner the failure to blow the whistle or ring the bell was the direct or proximate cause of the injury complained of, or contributed thereto. 13. It is not averred that the defendant had any right or authority to authorize or permit the train of the Birmingham Railway & Electric Company to use or occupy the track upon which the train on which the plaintiff was riding at the time of the alleged injuries then was.

To the 8th and 11th counts, the defendant separately demurred upon the following ground: It is not alleged or shown in said counts that the person or persons in charge of the train on defendant's track, after discovering the peril of the train in which plaintiff was riding, could, by the use of any efforts, have stopped the train on defendant's track in time to prevent the collision or injury to plaintiff.

To the 6th and 10th counts, the defendant separately demurred upon the following ground: "1. That in and by said several counts it is alleged in the alternative that the negligence of the defendant's employés in failing to give signals prevented the train from avoiding the collision or prevented the plaintiff from escaping the danger, and it is not averred which result would have followed the giving of such signals." Each of these separate demurrers were overruled.

The defendant interposed several pleas. The first was the plea of the general issue. In the second and third pleas the defendant alleged that the train which caused the injury complained of was operated without its knowledge or consent, and was not operated by any of the servants or agents of the defendant, or by its authority. The fourth plea alleged that the train on which plaintiff was a passenger was wrongfully on defendant's track. The other pleas were as follows: "5. For further answer to the complaint defendant says, that it was at the time of the alleged injuries the owner of the track on which the car of the Birmingham Railway & Electric Company, on which plaintiff was riding, was moving; and defendant avers, that the persons in charge of the train which it is alleged caused said injuries, but who were operating the same without the knowledge or consent of this defendant, before they saw or could have seen the said car, and before they knew or could have known that a collision was probable, had used all the means in their power to stop said train, *and continued to use the same after they discovered said car on the track*, but notwithstanding such efforts on their part the said train could not be stopped in time to prevent the collision, *and after discovering said car on the track there was not sufficient time in which to give any signals which would have prevented the collision and injury.*

"6. For further answer to the complaint, defendant says that it was at the time of the alleged injury the owner of the track on which the car of the Birmingham Railway & Electric Company, on which plaintiff was riding, was moving; and defendant avers that the persons in charge of said train which it is alleged caused said injuries, before they saw or could have seen the said car, and before they knew or could have known that a collision was probable, had used all the means in their power to stop said train, *and continued the use of the same after they discovered said car on the track*, but notwithstanding such efforts on their part, the said train could not be stopped in time to prevent the collision, *and after discovering said car on the track, there was not sufficient time in which to give signals which would have prevented the collision and injury.*

"7. For further answer to the complaint, defendant says that the train of cars on defendant's railroad was

equipped with brakes of approved pattern and other appliances for stopping and checking the speed thereof, and the defendant avers that the said brakes and appliances were on said day tested and were found sufficient to check the speed and stop said train, and a few minutes before the happening of the alleged collision, said brakes had been successfully applied for stopping the said train at the corner of Twenty-second street and Avenue E, a point about five hundred yards from the point of collision, that as the train was crossing the bridge on Twenty-second street, and before the engineer in charge of the engine, or the fireman, saw or could have seen the train on which plaintiff was riding, the engineer applied the brakes for the purpose of checking the speed of the train as it approached First avenue, and then discovered that there was some defect therein, and they would not work, and the engineer then reversed the engine and applied steam, and used all efforts to check the speed of the train, *and continued to use such efforts after he discovered the car on the track*, but notwithstanding such efforts the engineer was unable to stop said train, and it moved or slided on the rails down to the point where the train on which plaintiff was riding was, and which was on the track of defendant, and collided therewith without fault on the part of this defendant, its agents or servants, *and after discovering the car on the track, there was not sufficient time in which to have given signals which would have prevented the collision and injury.*

"8. For further answer to the complaint, defendant says that it was at the time of the alleged injuries the owner of the track on which the car of the Birmingham Railway & Electric Company, on which plaintiff was riding, was moving, and that the track on which the train was moving, which it is alleged caused the injuries and collision, crosses its other track on which the train was moving on which plaintiff was riding on First avenue at Twenty-second street, and defendant avers that it had the right of priority in the use of both of said tracks over the train of the Birmingham Railway & Electric Company, and that the agents and servants of the Birmingham Railway & Electric Company were required to keep out of the way of defendant's trains, and defendant avers that the said point where the said collision occurred was not a crossing of the tracks of the two

[Highland Avenue & Belt Railroad Co. v. Swope.]

railroads, but was a crossing of one track of defendant over another and the use of the track of defendant by the Birmingham Railway & Electric Company was subordinate and subject to the use of the same by the defendant; and defendant avers that the persons who were operating the train on its track before they saw or could have seen the car on which plaintiff was riding, and before they knew or could have known that a collision was probable, had used all the means in their power to stop the train on defendant's tracks, *and continued to use the same after they discovered the car on the track*, but notwithstanding such efforts on their part, the said train could not be stopped in time to prevent the collision *and injury*.

"9. For further answer to the complaint, defendant says that the train of cars on defendant's railroad which collided with the train on which plaintiff was riding was approaching First avenue across the bridge on Twenty-second street in such a manner and at such a rate of speed that it could, under ordinary circumstances and with the appliances with which it was equipped, be stopped before reaching the track upon which the train on which the plaintiff was riding then was, and defendant avers that the said appliances had been, a short time before said collision, tested and found to be in perfect condition, but that when said train was about to leave said Twenty-second street bridge, the engineer on said train put in operation said appliances in ample time, under ordinary circumstances, to stop said train before reaching said First avenue, and then for the first time discovered that said appliances were broken or out of order, and the engineer then reversed the engine and applied steam, and used all efforts to check the speed and stop said train, *and continued to use such efforts after he discovered the car on the track*, but notwithstanding such efforts, the said train moved or slided on the rails and collided with the train on which the plaintiff was riding, without fault on the part of this defendant, its agents or servants, *and after discovering said car on the track there was no sufficient time in which to give signals which would have prevented the collision and injury complained of.*"

These pleas, as originally filed, were without the italicised clauses, shown in them as copied above. To each of these pleas the plaintiff separately demurred

[Highland Avenue & Belt Railroad Co. v. Swope.]

upon the following grounds : 1. Because it does not allege that the persons in charge of the defendant's train, after discovering plaintiff's peril, used all means within their power to prevent the injury. 2. Because said plea does not aver that the persons in charge of defendant's train used all means within their power to stop the train after knowing or being in a position to know that a collision was probable. 3. Because said plea does not aver that the person or persons in charge of defendant's train gave the usual and proper signals of impending danger, and used all means within their power to prevent the injury. 4. Because said plea purports to answer the whole complaint, but is an answer to only a part thereof. 5. Because said plea purports to answer the whole complaint and yet neither denies the facts set out in the 5th count of the complaint, nor does it confess and avoid the facts set out in said fifth count. To the seventh plea the plaintiff demurred upon the following separate ground : "6. Because said 7th plea does not aver that all persons in charge of its train whose duty it was to use efforts to prevent the injury did all in their power to that end, but merely alleges facts to show that the engineer in charge of the train used all efforts to check the speed of said train." These demurrers were sustained, and the defendant amended the pleas by inserting therein the clauses in italics, with the exception of the last italicised clause in the 5th, 6th, 7th and 9th pleas. To the pleas as thus amended, the plaintiff interposed the same demurrers as were assigned to the original pleas, and in addition thereto the following grounds to each of the pleas separately : 7. Because said pleas do not allege that the persons in charge of defendant's train did all in their power to avert the injury to plaintiff. 8. Because said pleas do not aver that after discovering plaintiff's peril there was not sufficient time to give signals to avert the injury. 9. Because said pleas aver merely that the persons in charge of defendant's train did all in their power to stop the train, but do not allege facts showing that after discovering plaintiff's peril they did all in their power to avert the injury. The demurrers to each of the pleas as amended were sustained, and the defendant amended the 5th, 6th, 7th and 9th pleas by adding the last italicised clauses as contained in each of the said pleas as copied above ; and as

thus amended the defendant refiled the pleas to the amended complaint, and filed the following additional plea : "11. For further answer to the 5th, 6th, 8th, 9th, 10th and 11th counts of the complaint as amended, defendant says separately to each count that the engineer who had charge of the locomotive on its tracks, and after reversing his engine and applying steam and continued to use the same, *as alleged in the 7th, 8th and 9th pleas, which are made a part of this plea,* he believed and had reason to believe that the efforts he had made and which he continued to make, would be effectual to stop the train and prevent any collision, and he believed and had reason to believe that no signals he could give would be effectual to enable the train on which plaintiff was riding or plaintiff to get out of the way." To the 11th plea, the plaintiff demurred upon the following grounds : "1. Because said plea does not aver that the efforts made by the engineer were effectual to prevent the injury, but merely that the engineer believed, and had reason to believe, that the efforts he had made would be effectual to stop the train and prevent a collision. 2. Because said plea does not aver that any signals the said engineer might have given would not have been effectual to prevent the injury." The plaintiff's demurrer to the 11th plea was sustained.

Upon the trial of the cause the following facts were proved : The defendant was a corporation operating a dummy line in and around the city of Birmingham, and had entered into a contract with the Birmingham Railway & Electric Company to allow it the use of its tracks on first avenue in the city of Birmingham ; that the Birmingham Railway & Electric Company owned and operated the East Lake Dummy Line, which intersected with the tracks of the defendant at the intersection of First avenue and Twenty-second street ; that on August 6, 1893, the plaintiff was a passenger on the East Lake train, and that as said train was approaching the point of intersection with the defendant's road, on the corner of First avenue and Twenty-second street, the train being operated upon defendant's road collided with the East Lake train, causing the coach in which the plaintiff was seated as a passenger to be overturned, and inflicting the injuries complained of. There was also evidence of the fact that the train on defendant's road which collided

with the East Lake train was in charge of one R. D. Brown, an engineer, and one Draper, the conductor, to whom it had been rented that day by one P. T. Bradford, who had been, prior to August 1, 1893, superintendent of defendant's road, and who, on August 1, 1893, in connection with one W. E. Augur, leased the whole of defendant's road from defendant, and took charge on that day as lessees, but the formal lease was not signed by the president of defendant and delivered to the said Bradford and Augur, until August 12th, 1893, after the collision; that neither Brown nor the conductor nor any person operating the train was an employé of the defendant or of Bradford and Augur on the day of the collision, but Brown had previously worked for the defendant and was familiar with the road, engines and the customs of the defendant road and of the East Lake road; that Brown had received the train, which he was running that day, from Bradford that morning and had made two trips over the road from Nineteenth street and First avenue to a place called Brown's Park, and was coming in for a third trip when the collision occurred; that Brown's train consisted of an engine and two open cars which were practically empty; that the train was equipped with air brakes of approved pattern which had been tested and successfully applied several times that day; that there were hand brakes on the cars and a bell and whistle on the engine; that it was a part of the conductor's duty to apply hand-brakes when danger signal sounded; that a fireman rode on the engine with Brown and remained on the engine until just before the collision when he jumped off; that Brown remained on his engine until after the collision and his train had backed off from the East Lake train. There was evidence that the rate of speed at which Brown's train was running, at the time it came off the bridge and just before the collision, was from six to twelve miles an hour; and when it collided, at five or six miles an hour; that it was running at an unusually high rate of speed when three or four hundred feet from the East Lake train, and also that it was going at an unusually rapid rate of speed when 25 or 30 feet from point of collision; and that the East Lake train at the time of the collision was running four or five miles an hour to twelve or fifteen miles an hour,

There was also evidence tending to show that with the air-brakes in order and the engine reversed, the train on defendant's road at that place, running 8 or 10 miles an hour, could be stopped in 48 to 75 feet; and that without the use of the air brakes said train ought to be stopped by reversing the engine and giving her steam and sand in 60 to 100 feet; that it was usual and customary on all well regulated dummy lines to have hand-brakes and to blow the whistle for hand-brakes if the air-brakes were out of order; that hand-brakes were not applied; and that the engineer on the Highland Avenue train did not blow the whistle; that if the air-brakes did not work the train might run down grade 75 or 100 feet.

The engineer, Brown, testified that at the point on the bridge where it was usual so to do, and before he saw the East Lake train, he applied brakes and attempted to stop his train; that under the circumstances, with the appliances he had, he thought he could stop the train before reaching first avenue, but that he then, for the first time, discovered that the air-brakes were out of order; that he had used them successfully at Avenue E. and Twenty-second street about four or five blocks from the bridge only a few minutes before applying them on the bridge; that as soon as he discovered that the air-brakes would not work he reversed the engine and applied steam; that this was all that he could do, and that he believed, and had a right to believe, that this would stop the train before reaching First avenue; that when he reversed his engine and gave her steam the wheels locked and slided on the rails, and he was unable to stop it before the collision occurred; that the hose conveying the air to the brakes had pulled off of the pipe; that he did not blow the whistle, because he did not think the engineer on the East Lake train would understand it, and he had no time; but that the bell was ringing all the time.

There was evidence tending to show that a prudent and skillful engineer, when he saw an obstruction on the track and the probability of a collision, would give his engine sand and blow for brakes, and would give the danger signals, i. e., blow his whistle rapidly in succession. There was also evidence tending to show that after Brown had reversed his engine and given her steam the speed of the train slackened, and Brown testified

that he believed that it would stop before reaching the crossing.

Plaintiff's counsel on the examination of R. D. Brown, the engineer on the Highland Avenue train, asked said witness the following question: "Did you not rent the train that day from Augur and Bradford?" To this question defendant objected, on the ground that it was incompetent, irrelevant and inadmissible, and does not tend to show that the witness was not a trespasser. This objection was overruled, and the defendant then and there duly excepted. Witness answered: "Yes, I rented from Bradford." Plaintiff's counsel asked the said witness the following question: "Did you give her sand?" To this question defendant objected on the ground that the complaint does not aver any negligence in failing to give sand, which objection was overruled and defendant then and there excepted. Witness answered: "I didn't give her sand because the sand pipe was behind the wheels." The same witness was asked by the plaintiff: "Was the sand pipe between the wheels?" Defendant objected because it called for illegal, irrelevant and immaterial evidence, which objection was overruled and defendant then duly excepted. Witness answered: "It was."

Upon the introduction of all the evidence, the court in its oral charge to the jury instructed them, among other things, as follows: (1.) "It is clear that the defendant itself was not operating the road that day. You will confine yourselves to the counts charging that some persons, other than the defendants, were operating the road, with the consent of the defendant. If you are satisfied from the evidence that the defendant had given possession of the road to Augur and Bradford, and they were operating it, and they or either of them had rented the train to Brown, then the defendant is liable for any negligence of Brown. If you find that the defendant knew, or ought to have known, that Brown was operating the road that day, then it was liable for Brown's negligence." (2.) "If, after discovering the peril of plaintiff, or the train she was on, Brown failed to use all the means in his power, known to skillful engineers to prevent the injury, he would be guilty of wanton negligence, if by the use of such means he could have avoided the injury." (3.) "If Brown failed to give signals after

he discovered the peril of the train, and those signals would have enabled the plaintiff to get out of the way, he was guilty of not more than simple negligence, if that. He was not required to give them if they would do no good." To each of these portions of the court's oral charge the defendant separately excepted, and also separately excepted to the court's refusal to give each of the following charges requested by it: (3.) "If the jury believe from the evidence that due care and diligence was used in the selection of the engineer in charge of the H. A. & B. dummy engine, and said engineer failed to give any signals of warning, believing in good faith that they were unnecessary and would do no good, they must find for the defendant, although they may· believe that if such signals had been given the plaintiff might have escaped from the peril." (5.) "That if the jury believe from the evidence that the train on defendant's road was being run at an ordinary and lawful rate of speed, and the engineer on the Highland Avenue dummy, at a point reasonably sufficient to stop the train by the use of the appliances he had, and before reaching the crossing the engineer applied the brakes, which had been successfully used all day, and then first discovered that they were defective, and at once reversed his engine and applied steam, and by reason of the wheels of the engine blocking, he was unable to stop it and avoid the injury, then he was not guilty of negligence." (6.) "If the jury believe from the evidence that due care and diligence was used in the selection of the engineer in charge of the Highland Avenue & Belt dummy engine, and that he was a competent and skillful engineer, and in the emergency which confronted him he used the preventive means to avoid the collision which ordinarily prudent and skillful engineers would have used under similar circumstances, they must find for the defendant." (7.) "That if the engineer on defendant's road, before he saw or could have seen the train on which plaintiff was riding, and before he (the engineer) knew or could have known that it was approaching the crossing, had begun already to use all the means in his power to check and stop the train, and continued to use such efforts, and by reason of sudden discovery of defects in the brakes, and of the wheels of the engine blocking so that they slipped, and in spite of the efforts so made, the collision occurred,

then the engineer was not guilty of negligence." (9.) "That if the engineer on defendant's road, before he saw or could have seen the train on the other road and before he knew or could have discovered that it was approaching the crossing, and if the engineer at a place where he had reason to believe that his brakes and appliances would be sufficient to stop the train before reaching the crossing, attempted to apply the brakes and then first discovered that they were out of order and applied all the other means in his power to stop the train and continued to do so until the trains collided, and the collision was caused by the defects in the brakes and the slipping of the wheels on the tracks, he was not guilty of negligence." (14.) "That if the engineer on defendant's road before he saw or could have seen the train on which plaintiff was riding, and before he (the engineer) knew or could have known that it was approaching the crossing, (and was approaching the crossing at a moderate rate of speed), had already begun to use all the means in his power to check and stop the train, and continued to use such efforts, and by reason of sudden discovery of defects in the brakes, and of the wheels of the engine blocking so that they slipped and in spite of the efforts so made, the collision occurred, then the engineer was not guilty of negligence." (15) "That if the engineer on defendant's road, before he saw or could have seen the train on the other road, and before he knew or could have discovered that it was approaching the crossing (was approaching the crossing at a moderate and lawful rate of speed), and if the engineer at a place where he had reason to believe his brakes and appliances would be sufficient to stop the train before reaching the crossing, attempted to apply the brakes, and then first discovered that they were out of order, and applied all other means in his power to stop the train, and continued to do so until the trains collided, and the collision was caused by the defects in the brakes and by the slipping of the wheels on the track, he was not guilty of negligence." (23.) "That there is no evidence that Bradford or Augur had any authority to appoint Brown an agent of this defendant." (24.) "If the jury believe all the evidence, they should find a verdict for the defendant." (28.) "That if the jury believe all the evidence, the engineer was not guilty of any wanton, willful or

[Highland Avenue & Belt Railroad Co. v. Swope.]

reckless negligence.'' (43.) ''If the jury believe from the evidence that due care and diligence was used in the selection of the engineer in charge of the H. A. & B. dummy engine, and that he in good faith used such means at his command to prevent the injury, as in his judgment were appropriate to that end, they must find for the defendant.'' (44.) ''If the jury believe from the evidence that due care and diligence was used in the selection of the engineer in charge of the H. A. & B. dummy engine, and such engineer in good faith did what he thought was proper to be done to prevent the injury but was guilty of an error of judgment, the defendant is not liable for such error of judgment, and they must find a verdict for defendant.''

The 34th, 35th, 36th, 38th and 39th charges requested by the plaintiff are the general affirmative charges upon the 6th, 7th, 8th, 10th and 11th counts of the complaint, respectively.

There were verdict and judgment for the plaintiff. The defendant appeals, and assigns as error the several rulings of the trial court to which exceptions were reserved.

ALEX T. LONDON and JOHN LONDON, for appellant. 1. Failure to blow whistle or ring bell is but simple negligence.—*Railroad Co. v. Sampson*, 91 Ala. 560; *Railroad Co. v. Lee*, 92 Ala. 262; *Railroad Co. v. Linn*, 103 Ala. 134. Railroad trains are only required to stop at the crossing of the tracks of two railroads, not at the intersection or junction of the tracks of one railroad. Code of 1886, § 1145.

2. Willfulness or wantonness implies a willingness or purpose to inflict injury, or such recklessness as indicates an indifference to the probable consequences which may result in injury.—*K. C., M. & B. R. R. Co. v. Crocker*, 95 Ala. 433; *A. G. S. R. R. Co. v. Hall*, 105 Ala. 599.

3. Excessive rate of speed at a place where no one is injured, or likely to be injured, is no evidence of recklessness at another place where a collision is possible, if before reaching the latter place the engineer is enabled to stop his train by the use of the usual appliances with which his train is equipped.—*L. & N. R. R. Co. v. Black*, 89 Ala. 313; *A. G. S. R. R. Co. v. Hall*, 105 Ala. 599.

[Highland Avenue & Belt Railroad Co. v. Swope.]

4. An engineer is not required to resort to preventive efforts to avoid an injury, if such efforts would not be effectual; and the failure to do an act, which if done might or would have prevented an injury, does not necessarily constitute it an intentional, or such willful and wanton wrong as to be the equivalent of intentional wrong.—*Railroad Co. v. Crocker*, 95 Ala. 433; *Railroad Co. v. Markee*, 103 Ala. 160; *Railroad Co. v. Crawford*, 89 Ala. 240; *Stringer v. Railroad Co.*, 99 Ala. 397. Preventive efforts need not be resorted to at the risk of greater injury than that to be avoided.—*Pannell v. Railroad Co.*, 97 Ala. 298.

5. The negligence complained of must not be *a* cause, but *the* cause of the injury.—*Western Railway Co. v. Mutch*, 97 Ala. 194. Negligence can not be averred in the alternative in the same count.—*H. A. & B. R. R. Co. v. Dusenberry*, 94 Ala. 413; *B. R. & E. Co. v. Baylor*, 101 Ala. 488; *R. & D. R. R. Co. v. Weems*, 97 Ala. 270.

6. The second paragraph of the court's general charge, to which exception was reserved, asserted an erroneous proposition. The failure of an engineer, under any state of facts, to use all the means in his power known to skillful engineers to prevent injury, does not constitute wanton or willful negligence, if by the use of such means the injury could have been avoided.—*L. & N. R. R. Co. v. Markee*, 103 Ala. 160; *L. & N. R. R. Co. v. Crawford*, 89 Ala. 240; *Leak v. Ga. Pac. R. Co.*, 90 Ala. 161; *K. C., M. & B. R. R. Co. v. Crocker*, 95 Ala. 433.

LANE & WHITE, *contra.*—The sixth count of the complaint was not demurrable upon the grounds assigned. The negligence complained of was not averred in the alternative.—*H. A. & B. R. R. Co. v. Dusenberry*, 94 Ala. 413; *R. R. Co. v. Baylor*, 101 Ala. 488.

The pleas of the defendant present no defense to the several causes of action, and the demurrers should have been sustained.—*Phoenix Ins. Co. v. Moog*, 78 Ala. 284; *R. & D. R. R. Co. v. Greenwood*, 99 Ala. 501.

The defendant was liable under the evidence in this case. The fact that the train at the time of the injury was being operated by others to whom the defendant had given the control of the train, presented no defense. *Ricketts v. Bir. St. R. Co.*, 85 Ala. 600; *Montgomery G.*

*L. Co. v. M. & E. Railway Co.*, 86 Ala. 373 ; *Ga. Pac. R. R. Co. v. Underwood*, 90 Ala. 49.

The defendant was guilty of wanton or willful negligence, and the second paragraph of the court's oral charge asserted a correct proposition of law.—*R. & D. R. R. Co. v. Greenwood*, 99 Ala. 501.

HEAD, J.—Action against appellant for personal injuries. The case was tried upon counts numbered, respectively, 1, 3, 5, 6, 7, 8, 9, 10 and 11. The court gave the general charge for defendant on counts 1, 3, 5 and 9. The first contains the essential introductory facts which were adopted by the subsequent counts. It alleged, in substance, that defendant operated a railroad in Birmingham and vicinity, commonly called a "dummy line," for the common carriage of passengers, running on Twenty-second and other streets. That street and First avenue—another street of the city—intersect and cross each other. At the time of the injury another company, the Birmingham Railway and Electric Co., by and with the permission, consent or license of the defendant, was operating and running cars within and outside the city for the carriage of passengers, on and over a railroad on said First avenue, passing the point of intersection of Twenty-second street. The tracks of the two roads cross each other at the crossing of the two streets. The plaintiff was a passenger on a car of said Electric Co. proceeding along First avenue, and at the point of crossing of the two roads, a train on defendant's road "under the control or management of the person or persons in charge of said train, by and with the defendant's consent, approached First avenue, coming across a bridge on Twenty-second street, and ran into and collided with the train on which plaintiff was riding, turning the latter train partly over and thrusting plaintiff against her seat or seat-handle, and throwing another person against plaintiff with great force, and throwing plaintiff out of the car to the ground," causing specified injuries to her person. The count avers that said injuries were the result of negligence of the person or persons in charge of defendant's said train in the management or the running of the same.

The sixth count varies, somewhat, the introductory allegations of the preceding counts. It alleges that de-

fendant was the *owner* of the road running on Twenty-second street, and was incorporated and organized for the purpose of owning and operating it, which road was used for the transportation of passengers over and upon its lines. It also alleges, simply, in reference to the other road, that said Electric Co. was then operating for the carriage of passengers for hire, and was a common carrier, omitting any reference to defendant's consent to such operation. The cause of the injury is alleged to have been the negligence of some person or persons in charge of defendant's train on defendant's road, as aforesaid, such persons being in charge of such train by the consent of defendant, in this, that, after discovering the peril of the train in which plaintiff was riding, and after discovering plaintiff's peril, the said persons failed to give the usual and proper signals which would have enabled the train on which plaintiff was riding to avoid the collision, or would have enabled plaintiff to escape from the impending danger, but caused or permitted their train to run until it collided, &c.

The seventh count, containing the same introductory averments as the sixth, charges as the negligence causing the injury, a failure to ring the bell or blow the whistle, at short intervals, while moving within and passing through the city.

The eighth count, with the same introduction, charges, as the negligence causing the injury, a failure to stop or check the train, after discovering the peril of plaintiff's train and of herself.

The tenth count is, in legal effect, the same as the sixth.

The eleventh count is, in effect, the same as the eighth.

None of the demurrers to these counts, either in the original or amended forms of the counts, were well taken.—*H. A. & B. R. R. Co. v. South*, 112 Ala. 642—a case growing out of the same collision and involving substantially the questions raised by these demurrers.

We think there is no merit in the objection that the sixth count alleges alternative acts of negligence. The plaintiff's injury, as the facts are averred, was an incident of the collision of trains. Without the principal fact, to-wit, the collision, the incident, to-wit, the injury, would not have happened; but it does not follow that the incident (which is the cause of action here) might

not have been prevented by the appellant, notwithstanding the happening of the principal fact. It was the duty of the defendant, if under the facts and rules of law governing such cases, it could have done so, to apply such means as would have prevented plaintiff's injury, either by prevention of the collision itself, without which there could have been no injury, or by enabling the plaintiff to avoid injury, notwithstanding the collision might have been unavoidable. The count avers failure to perform this duty. We see nothing in it opposed to good pleading. The demurrers do not specifically raise the objection that the count does not state, with sufficient detail, how the giving of usual and proper signals would either have prevented the collision or enabled the plaintiff to otherwise escape injury; hence we do not consider the sufficiency of the count, in those respects.

The fifth plea, whilst it alleges that the persons who were operating the train alleged to have done the injury, were operating it without the knowledge or consent of the defendant, yet undertakes to defend by exculpating them; and fails to do so, legally, by the plea, either in its original or first amended form. It fails to show that the injuries to plaintiff would not have been avoided by the giving of signals, the failure to give which was charged in some of the counts, as the cause of plaintiff's injury. The demurrer to the plea was properly sustained.

Each of the other pleas from 6 to 9, inclusive, as first amended, to which demurrers were sustained, were subject to the same infirmity.

The belief of the persons in charge of the train, based merely upon the fact that they had reason for such belief, as to what was proper for them to do, does not necessarily justify or excuse. The belief, to justify, must have been based upon such a state of facts and circumstances as would have induced a reasonably prudent and cautious person, similarly situated, and having reasonable skill for such a position, viewing all the surroundings, and exercising such skill, prudence and caution, to believe that the course pursued was the proper one. The eleventh plea was, therefore, bad and subject to the demurrer assigned.

Upon the undisputed evidence, the defendant was responsible for any actionable negligence committed by

[Highland Avenue & Belt Railroad Co. v. Swope.]

the persons operating its train on the occasion in question; so that the question asked Brown, as to renting the train from Augur and Bradford, was of no importance, and could have done the defendant no harm.—*H. A. & B. R. R. Co. v. South, supra.* Upon the same principle, there was no error, prejudicial to the defendant, in the first oral instruction to the jury, to which exception was reserved; nor in the refusal to give charge 23 requested by defendant.

The questions asked Brown by plaintiff, "Did you give her sand?" and, "Was the sand pipe between the wheels?" were allowable under the first, if not other counts of the complaint.

As fully explained in *A. G. S. R. R. Co. v. Burgess,* 114 Ala. 587, referring to other recent decisions of this court, we are compelled to hold that the second oral instruction to which exception was reserved was erroneous. Under these late authorities, the general expressions of the long line of preceding decisions (which no doubt influenced the court to give this instruction) were modified or explained, as stated in *A. G. S. R. R. Co. v. Burgess,* 114 Ala. 587, *supra.* The facts hypothesized in the instruction, are now held to constitute nothing more than simple negligence. To constitute willfulness it must appear that the engineer was conscious, at the time, that he was not using the means he ought to use to prevent the injury. If, in good faith, he did what he thought was best, it matters not how far he may have failed in skill, or erred in judgment, or what mere inadvertence or negligence may have caused him to do or omit what was best not to have been done or omitted, he can not be said to have *willfully* or *wantonly* caused the injury. We remark, that under the influence of this principle, none of the counts of the complaint charge willfulness or wantonness. They all charge simple negligence only.

Defendant can not complain of the third oral instruction.

The good faith or the honest belief of the engineer, in what he did, does not, of itself, show that there was no negligence on his part. Charges 3, 43 and 44 requested by the defendant were, therefore, bad.

Defendant's charges 5, 7, 9, 14 and 15, ignore those counts charging failure to give signals. Some, if not all of them, also ignore the principle that the giving of the

signals might have prevented plaintiff's injury, by enabling her to escape from the train, although the collision of the trains might have been unavoidable by anything the defendant could have done.

Charge six is bad under the principle last stated. It only excuses the *collision* of trains, whereas, the exercise of all due care by the persons operating the train might have enabled the plaintiff to escape the dangers of the collision.

The subject-matter of charge number 28 was not in issue in the cause, and the court was not required to instruct the jury, at all, in reference to it.

There was evidence tending to support each count of the complaint, to which the several general charges requested by defendant referred, and the charges, in consequence, were properly refused.

For the single error of giving oral charge number two, the judgment is reversed and the cause remanded.

Reversed and remanded.