# Indiana, Illinois & Iowa Railway Company *v.* Trinosky.

[No. 4,659. Filed January 5, 1904.]

Negligence.—*Contributory Negligence.*—*Railroads.*—*Injury at Crossing.*—An employe was riding slowly along the railroad track on a speeder inspecting the wires and pipes of the interlocking appliances where several roads crossed and looked and listened for trains when he was about seventy-five feet from the center of the crossing, and again when he was about thirty-five feet from the crossing, but did not look before going upon the track, though he had an unobstructed view, and could have stopped the speeder within a distance of one foot. *Held,* that he was guilty of negligence precluding a recovery for injuries sustained by being struck by a train which was backing without a brakeman in proper position on the rear car.

From Pulaski Circuit Court, *G. W. Beeman,* Judge.

Action by John C. Trinosky against the Indiana, Illinois & Iowa Railway Company. From a judgment in favor of plaintiff, defendant appeals. *Reversed.*

*Cary & Walker, F. J. L. Meyer* and *C. P. Drummond,* for appellant.

*Nichols & Foster* and *H. A. Steis,* for appellee.

Black, J.—In the appellee's action against the appellant to recover damages for a personal injury, the jury returned a general verdict in favor of the appellee, with special findings in answer to interrogatories. The court overruled the appellant's motion for judgment on the answers to interrogatories.

There were special findings to the effect that the railroad of the appellant was crossed at North Judson by the tracks of two other railroad companies, which, for brevity, we may call the Erie Company and the Pennsylvania Company. These three companies maintained there an interlocking system. The jury found that the appellee, a

man twenty-four years of age, was an employe of the appellant, his duties being to inspect, oil, clean, and keep in repair the interlocking appliances, and to set up and take down switch lights; and his duties required him to go upon and across the appellant's track at the time of his injury. He was moving slowly westward on the Erie track, examining the wires and pipes of the interlocking appliances across the Erie track, and eastward along the appellant's track. He was struck by a car moving eastward on appellant's track about seventeen feet from the center of the crossing, and about three feet from the south side of the appellant's track. He looked and listened for trains when about thirty feet from the center of the crossing. "Part of the time" his view westward on the appellant's track was obstructed by box cars standing on the scale track west of the place of injury, until he came within about thirty-five feet of the center of the crossing. The appellant backed its engine, with two cars behind it, over the Erie crossing, at the time of the accident, at about the speed of eight miles an hour. No signal or warning was given by the appellant when its train so approached the crossing. The appellee looked and listened for trains when about seventy-five feet from the crossing, and again when about thirty or forty feet from the crossing. He was engaged in the line of his duty. One Finch was employed by the Pennsylvania Company as superintendent of signals, and no other company had any right to give him orders or directions. The appellee was under the supervision of Finch, and was entirely subject to his orders and control; his duties being defined by the department under the supervision of Finch. The appellee was paid for his services by the paymaster of the Pennsylvania Company. He was subject to discharge at any time by Finch, acting as supervisor of signals of the Pennsylvania Company. The interlocking system was controlled by a tower situated on the Pennsylvania Company's right of

way. The appellant paid a fixed monthly charge to the Pennsylvania Company for the use of the interlocking benefits. The appellee, at the time of the accident, was performing duty assigned to him by the Pennsylvania Company, through Finch. The appellant's locomotive was moving eastward on its main track, with a box and coal car attached, backing the cars. The engineer in charge was on the side of the locomotive where his duties and the rules of the company required him to be. He looked ahead in the direction in which he was going from the time he passed the Pennsylvania crossing until the accident occurred. He was looking ahead toward the east, up the appellant's track, and ahead of the coal car. The cars that were being backed obstructed his view of any one east of the crossing that might be on the Erie track. He did not know that the appellee was on the Erie track east of the crossing. The towerman, at the time the locomotive was being backed, gave the engineer the right of way crossing the Erie track on appellant's main track. The "D" rail of the Erie track, east of the crossing, was open. This the appellee knew. The engineer was operating the locomotive at a speed of from six to eight miles an hour. The head brakeman was not at his place on the coal car that was being shoved, where the rules of the company required him to be. He did not see the appellee as he was approaching the crossing. His failure to see was due to the fact that he did not look. If he had looked, he would have seen the appellee coming down the Erie track toward the crossing. The appellee's injury was due, "to a certain extent," to the head brakeman's failure to look, and, "to a certain extent," to his negligence in failing to look, and in failing to see the appellee as he was approaching the crossing. Neither the brakeman nor any other person gave the engineer notice that the appellee or any person was approaching on the Erie track. The engineer was moving the locomotive in the ordinary and usual manner. The

locomotive and cars, before starting to back, were in the Pennsylvania yards, near and adjoining the Pennsylvania crossing with the appellant's track. The engineer blew his whistle and made a signal to the towerman for the appellant's main track. When he did so, the locomotive was about 400 feet from the Erie crossing. The engineer called for the team track beyond the Erie crossing by whistling. On the Erie track, seventy-five feet east of the appellant's track, there was an unobstructed view of seventy-five feet toward the west on appellant's track. At that point the appellee looked for the approach of a train on the appellant's track, and did not see any train. When he was thirty feet from the south rail of the appellant's track, approaching the crossing, his view was unobstructed, looking westward on the appellant's track, for a distance of about 100 feet. There were no wires or other apparatus connected with the interlocking system between the crossing and the pipe which crossed under the Erie track next east of the crossing. The first apparatus east of the Erie crossing that required appellee's attention were "pipes, interlocking switch, and appliances." The pipes which crossed under the Erie track about twenty feet east of the crossing were the last apparatus and fixtures to examine, when coming from the east, toward the towerhouse, before reaching the crossing. Such apparatus was about eighteen feet from the south rail of the appellant's main track. The appellee was examining, with his head down, the last apparatus nearest the appellant's track, on the Erie road, while sitting on a speeder, when the engine approached the crossing. He had an unobstructed view, from the point where this last apparatus was, to the Pennsylvania crossing, on the appellant's main track. The locomotive and cars were approaching the crossing at the same time that the appellee was approaching it on the Erie track. The appellee and the cars came together about the same time they respectively approached the crossing. The ap-

pellee did not at any time see the locomotive and cars as they were approaching the crossing. When the appellee was at a distance of fifteen feet from the south rail of the appellant's main track, he would have been able to see 289 feet west on that track, if he had looked. He was approaching the crossing on a speeder, going slowly. He could have stopped his speeder at any time before reaching the crossing—within a distance of one foot, if he, so desired. He was coming from the east on the speeder toward the crossing. He examined apparatus to the left of him, and continued to examine apparatus until he came, to where the pipe passed under the track of the Erie road. He looked for approaching trains from the west on appellant's track two times. The first time he was about seventy-five feet distant, and the last time he looked he was about thirty-five feet from the crossing. The pipelines which passed under the Erie track were the last interlocking apparatus to be examined by him as he came from the east. This apparatus, it was found, was about eighteen feet from the north (?) rail, and twenty-six feet from the south (?) rail of the appellant's main track. At a distance of eighteen feet from the crossing, he had an unobstructed view of the appellant's main track as far west as the Pennsylvania crossing. When he last looked for trains approaching from the west on appellant's main track, he was about thirty feet from the south rail of that track at its crossing with the Erie track. At about 300 feet from the south rail of appellant's main track, at its crossing with the Erie track, the appellee had an unobstructed view of the appellant's main track looking westward as far west as the Pennsylvania crossing. The appellee proceeded from a point sixteen feet east in the center of the Erie track, from the south rail of the appellant's main track, by looking sideways and backward toward the apparatus, backward from him as he was approaching the crossing. If he had looked, he would have seen the appel-

lant's locomotive and cars that were being pushed on the appellant's main track toward the crossing.

There is some confusion, with some apparent contradiction, in these special findings. Without adverting to the question as to the negligence of the appellant, or to the relation existing between it and the appellee, we observe that there is enough in the special findings to show conclusively that the appellee might have discovered the danger of collision with the train on appellant's track in time to have stopped the speeder on which he was riding, and thereby have avoided contact with the car. His duty was not such as to deprive him, in the proper discharge thereof, of the ability or opportunity to see the danger. On the contrary, it was his duty, in approaching, to look for the approach of the train by which he was injured. The presence and condition of the crossing tracks, and his knowledge thereof, imposed upon him such caution. He had looked for trains when seventy-five feet distant from the crossing and also when thirty feet distant. He apprehended the possibility of the approach of a train. Yet, when injured, he was advancing to the crossing without looking ahead. He was looking sideways and downward and backward, while progressing forward to the crossing, where he could have seen the train, and was in such immediate nearness to it that it can not be said that such conduct was reasonably prudent at that time and place. If he had not failed in this regard, he would not have been injured; at least he could have stopped the speeder after seeing the approaching car in time to avoid the injury. It must be said, we think, that the special findings show negligence on the part of the appellee, without which the injury would not have occurred, and that his own negligence contributed materially to the injury. Under such circumstances, there rests upon each party an obligation to exercise reasonable care and diligence. While the injury was due, "to a certain extent," to the failure of the head brake-

man to look when he could have seen the appellee, it must also be regarded as due, to some material extent, to the failure of the appellee to look when, consistently with the proper performance of his own duty of inspection, he could have seen the approaching train. The fair and reasonable construction of the special findings seems to direct us to this conclusion with sufficient certainty to leave no occasion for ordering a new trial.

The judgment is reversed, and the cause is remanded, with instructions to sustain the appellant's motion for judgment.