# Baltimore & Ohio Southwestern Railroad Company v. Reynolds.

## [No. 4,700. Filed May 24, 1904.]

NEGLIGENCE.—*Complaint.*—A complaint in an action against a railroad company for personal injuries alleging that defendant's cars and locomotive were run into, upon, and over plaintiff and his horses and wagon, and his injuries were caused wholly by the fault and negligence of defendant in the operation of said cars and locomotive, without any fault or negligence on the part of plaintiff, contains a sufficient charge of negligence in the absence of a motion to make more specific. *pp. 220–222.*

RAILROADS.—*Violation of City Ordinance.*—*Negligence.*—The violation of a city ordinance requiring a watchman to be placed on trains running backwards, limiting the speed of trains through the city, and requiring the ringing of the bell, is negligence *per se. pp. 222, 223.*

SAME.—*Violation of City Ordinance.*—*Personal Injuries.*—*Proximate Cause.*— *Question of Fact.*—Where a complaint charged that plaintiff's injuries resulted from the failure of defendant to comply with a city ordinance in the operation of its cars—a failure amounting to a breach of legal duty—the question whether such breach of duty caused the injury was for the determination of the jury. *p. 223.*

SAME.—*Wilful Injury.*—*Violation of City Ordinance.*—*Complaint.*—A complaint charging a wilful injury of plaintiff by a collision with a train of cars is not rendered bad by a repetition, after the allegation charging the wilful injury, that the train was running in violation of a city ordinance. *pp. 223, 224.*

APPEAL AND ERROR.—*Precipe.*—A precipe appended to the transcript, signed by appellant's attorneys, and duly filed by the clerk, directing the incorporation of the original bill of exceptions in the transcript as a part thereof is a sufficient compliance with the statute to authorize a consideration of the evidence on appeal. *pp. 224, 225.*

RAILROADS.—*Injury at Crossing.*—*Contributory Negligence.*—Plaintiff was hauling gravel and was required to cross a side-track with which he was familiar and which he knew was frequently used. He proceeded on a street or road parallel with the side-track to a point 200 feet from the crossing, where he stopped, looked, and listened for a train, and neither seeing nor hearing any, he drove ahead, without again looking back, to and onto the crossing, where his wagon was struck by a train of cars approaching from the rear. *Held*, that plaintiff was guilty of contributory negligence precluding a recovery. *pp. 225–229.*

From Daviess Circuit Court; *M. S. Hastings*, Special Judge.

Action by Samuel Reynolds against the Baltimore & Ohio Southwestern Railroad Company. From a judgment for plaintiff, defendant appeals. *Reversed.*

*W. R. Gardiner, C. G. Gardiner, T. D. Slimp* and *Edward Barton,* for appellant.

*W. A. Cullop, G. W. Shaw, A. J. Padgett* and *J. A. Padgett,* for appellee.

COMSTOCK, J.—The appellee brought this action against the appellant to recover damages for injuries to his person sustained in a collision with one of appellant's trains at a highway crossing in the city of Vincennes, Indiana. It was begun in the Knox Circuit Court, and tried in the Daviess Circuit Court on change of venue. Two trials were had. In the first the jury failed to agree, in the second they returned a verdict for the appellee in the sum of $750, upon which judgment was rendered over a motion for a new trial, which called in question the sufficiency of the evidence, the legality of the verdict, and alleged errors pertaining to certain instructions given and refused. The errors assigned challenge each of the three paragraphs of complaint, and the action of the court in overruling the motion for a new trial. The sufficiency of the complaint was not tested by demurrer in the court below.

The first paragraph alleges, in substance—omitting the formal parts—that the company used and operated switch tracks in the city of Vincennes for the purpose of connecting its main track with warehouses, mills, and factories, and transporting products from them to its main track; that one of these tracks extended from its main track in a southwesterly direction near to and parallel with the Wabash river, intersecting a street at a sharp angle; that on September 25, 1901, the company was engaged in operating its road, and was running cars and locomotives along the switch, and the plaintiff was a teamster engaged in hauling gravel with a team of horses and wagon along the street; that while passing along with his team he and his

Baltimore, etc., R. Co. *v.* Reynolds.

horses and wagon were run over by a locomotive and train of cars belonging to the company and then being operated by it on the switch, whereby and by reason of which the wagon was demolished, he was violently thrown from it, his shoulders, collar bone, and ribs were dislocated and broken, and his limbs and body otherwise severely bruised and injured; that the cars and locomotive were run into, upon, and over him and his team of horses and wagon, and his injuries were caused wholly by the fault and negligence of the defendant in the operation of said cars and locomotive, and without any fault or negligence on his part.

The second paragraph is substantially the same as the first, with the additions that at the time there was in force in the city of Vincennes "an ordinance for the security of citizens and others from the running of railway trains," which provided that it should be the duty of every engineer, conductor, or other person engaged in running any locomotive to ring the bell while the same was moving in or through the city, under penalty of from $1 to $5 upon failure to do so; also that it should be unlawful for any such person managing or running any locomotive or car to run or cause the same to be run backwards in or through said city without having a watchman or other person on the rear end to prevent accidents, and fixing a penalty of from $3 to $5 for its violation; also an ordinance making it unlawful to run any locomotive or car, or cause the same to be run, in or through the city at a higher rate of speed than five miles an hour; that the defendant ran its train on said occasion along its said track in and through the city unlawfully, and in violation of the provisions of said ordinances, and each of them, without ringing the bell, ran the same backwards without having a watchman or other person on the rear end to prevent accident, and ran the same at a rate of speed higher than four miles an hour, namely, ten miles an hour. It is also averred that the plaintiff's injuries were caused solely by the negligence and unlawful

acts and omissions, and without fault or negligence on the part of the plaintiff; also that had the defendant complied with the provisions of the ordinances the plaintiff's injuries could and would have been avoided, and that the failure to comply with them was the sole cause of the injury.

The third paragraph sets out substantially the same facts as the second, with additions which relate to the thickly settled portion of the city through which the train was run, and alleges that the injury was purposely and wilfully inflicted.

Appellant's objection to the first paragraph is that it states no facts relating to appellee and the manner of his injury other than that there was a collision between him and the cars by the cars running against him and his horses and wagon. Negligence is charged in the following language, viz.: "That said cars and locomotive were run into, upon, and over him and his said team of horses and wagon, and his said injuries were caused wholly by the fault and negligence of the defendant in the operation of said cars and locomotive, and without any fault or negligence on the part of the plaintiff." In answer to the objection we deem it only necessary to say that it has been held in numerous cases that "a general allegation of negligence is sufficient to withstand a demurrer for want of facts, unless the contrary appears from the facts pleaded." *Louisville, etc., R. Co.* v. *Bates,* 146 Ind. 564. The language employed is substantially equivalent to a general allegation of negligence in the operating of said cars and locomotive, and is therefore sufficient. A motion to make the complaint more specific would doubtless have prevailed, but such motion was not made.

It is contended that as the negligence attributed to the defendant in the second paragraph, as proximately causing the injuries complained of, is the violation of city ordinances relating to the operating of cars and locomotives in

the city, to be good it should disclose appellee's own conduct at the time, in order that the court might determine from the facts pleaded whether or not the conduct of the appellant in violating such ordinances did proximately cause appellee's injuries; that the violation of the ordinances by appellant's servants does not conclusively fix culpable negligence upon appellants. The violation of the city ordinance by appellant in running its train backwards without having a watchman on the rear end to prevent accidents, and in running its train at a greater rate of speed than the ordinance allowed, and without ringing the bell, was negligence *per se.* §3541 Burns 1894, subdivision 42, §3106 R. S. 1881 and Horner 1897; *Baltimore, etc., R. Co.* v. *Peterson,* 156 Ind. 364, and cases cited.

Appellee's injury is charged to the failure of appellant to comply with these ordinances—a failure amounting to a breach of legal duty. Whether this breach of duty caused the injury was to be determined by the jury. *Chicago, etc., R. Co.* v. *Fenn,* 3 Ind. App. 250.

The third paragraph is based upon wilfulness. Wilfulness is charged in the following language: "That he, together with his said horses and wagon, were purposely and wilfully, by defendants in charge of said train, run into, on, and over by a train of cars and locomotive belonging to, and then operated by, the defendant in charge of its servants on its said switch track, whereby and by reason whereof said wagon was demolished, he was violently thrown therefrom, his collar bone and ribs were broken and dislocated, and his limbs and body were otherwise severely bruised and injured. And the plaintiff further avers that said collision was made purposely, wilfully, and intentionally by the defendant and its servants in charge of said train, and that said injuries were occasioned in consequence thereof."

Appellant concedes that the foregoing is possibly a sufficient allegation of wilful infliction of the injury, but con-

tends that the specific averments which follow control the
former general averments, and render the paragraph bad.
The paragraph proceeds: "And the plaintiff further avers
that at the time of the happening of the grievances herein-
above set forth, that said track and crossing were located
in a densely populated portion of said city," and that the
said city ordinances were violated as set forth in the second
paragraph; "that the defendant was aware of all these
facts, was aware of the densely populated portion of said
city, was well aware that the crossing at which the collision
occurred was one used by numerous persons daily for cross-
ing with wagons and on foot and on horseback, and yet, in
violation of all of these, said defendant ran said train as
aforesaid backwards through said city without ringing the
bell and without any person stationed on the rear end there-
of as required by the ordinance, and at the speed of twenty·
miles an hour, wilfully, purposely, and intentionally, being
fully aware of all of the facts aforesaid as to the use, popu-
lation, and condition of said crossing." We construe the
repetition of the averments of the second paragraph as
giving the conditions and circumstances under which the
act of wilfulness was committed, and of emphasizing the
general allegation, rather than a statement that the wilful
act consisted entirely of the violation of the ordinances.

Appellee insists that the questions raised by the motion
for a new trial can not be considered because the evidence
is not in the record. The claim is based upon the alleged
ground that the original bill of exceptions is dependent
upon a precipe, and no precipe is certified with the tran-
script; that what purports to be a precipe is "a mere
annex." A precipe, containing the title of the cause, the
court in which the cause had been tried, the term of court
when tried, formally addressed to "The Clerk of the Davi-
ess Circuit Court," requesting him to "make out and certify
for appeal to the Appellate Court of Indiana a full, true,
and complete transcript of the pleading, proceedings, order-

book entries, and papers of record in the above-entitled cause, to wit: The plaintiff's motion for special instructions, and the instructions that the plaintiff requested the court to give to the jury. The defendant's motion for written and special instructions, and the instructions the defendant requested the court to give. The instructions given by the court on its own motion. And please incorporate the original bill of exceptions in the transcript as a part thereof." This precipe is signed by the appellant's attorneys, and duly filed by the clerk. The file mark is on the reverse of page two of the transcript. The precipe is appended to the transcript. The statute has been complied with.

The evidence shows that the main line of appellant's railroad lies nearly east and west through the city of Vincennes, and across the Wabash river. A spur or switch track, belonging to the Evansville & Terre Haute Railroad Company, connects with appellant's railroad on the east side of the river, and runs nearly parallel therewith, and a short distance therefrom to the northeast, over level ground. There is an old wagon road leading from Vincennes towards the northeast on the east side of the river, known as the Terre Haute road. There is a street in the northern part of Vincennes lying southeast and northwest called Sycamore street. The northwest end of Sycamore street terminates in the Terre Haute road. From the intersection of Sycamore street with the Terre Haute road, the road runs northeastward on the south side of the said spur, and parallel with it, and ranging from twenty to twenty-five feet from it, for a distance of 581 feet, where the spur bears more to the east, and the road bears to the north and crosses the railroad. Southwest of the intersection of Sycamore street with the Terre Haute road, on the southeast of said spur, there were side-tracks, one of which, lying seven feet from the spur, connected with said

spur, the switch gate being immediately west of the west end of Sycamore street, and the point of clearance, where a car on the side-track, that was next to the main spur, could be passed by cars on the main spur, is 200 feet southwest of Sycamore street. There was no side-track northeast of Sycamore street. There was no fence, super-structure of any kind, or growth of any kind between the Terre Haute road and the spur, at any point southwest of the crossing. There was a clear and unobstructed view along the spur looking to the southwest past the north corner of a box-car standing on the side-track next to the spur, as far to the northeast as it could and allow a train to pass by on the spur, from the following points in said road, from the following distances, respectively, viz.: Twenty-five feet southwest of the crossing, 1,270 feet; and 150 feet southwest of the crossing, 997 feet. As one travels along the Terre Haute road towards the crossing from Sycamore street, the view along the spur back to the southwest, and looking to the west of such box-car, becomes more and more extended all along the crossing. The crossing is at a common grade, and only slightly elevated above the natural level surface and the highway.

The appellee was hauling gravel down into the city from a pit north of the crossing, with a gentle team that he could safely drive or stand as close to a train as possible without being struck; and he was entirely familiar with the spur and the fact of its frequent use, and with the crossing and all of the environments. He had hauled one load, and was returning with the empty wagon for another at about 7:30 a. m., sitting on a seat board at the front end of the wagon bed, with his left foot on the outside of the front end board and his right foot on the inside of the end board. He entered the Terre Haute road at the mouth of Sycamore street, at which point he saw no train on the spur. He proceeded northeast along the road in a slow walk to a point 200 feet from the crossing, where he stopped, looked

and listened for a train, and, neither seeing nor hearing any, drove ahead, without again looking back, to and onto the crossing, where his wagon was struck by a train of loaded coal-cars, being pushed, with the engine running backwards, on the said spur running to the northeast; and by that collision he received the injuries for which he sued in this action. The train and the appellee were moving in the same direction until the appellee turned to cross the railroad. Appellee was thirty years old. His senses of sight and hearing were good.

An ordinance of Vincennes, limiting the speed of trains in the city to five miles an hour, requires that the whistle be not sounded, but that the bell be rung, and when running backwards that a man be stationed at the rear end lookout. The bell was not rung and no one was at the rear end of the train, but the yardmaster was stationed between the rear car and the one next to it. There was a brake at that end of the rear car. Thus the negligence of appellant conclusively appears.

There is no substantial conflict in the evidence, except as to the ringing of the bell. That question is resolved in appellee's favor. He approached the crossing with a gentle team under complete control. He drove over ground affording an unobstructed view of the railroad in ample time to have seen and avoided his danger if he had looked. His failure to see the cars was due to his failure to look. The physical facts show that his negligence proximately contributed to his injury. He was familiar with the crossing and its frequent use. Appellant's negligence did not relieve him from exercising care for his own safety commensurate with the danger of which he had knowledge. A grade crossing, to a person acquainted with it and about to pass over it, is a warning of danger, and the law fixes the quantum of care that he must exercise. "The statement, so frequently found in the authorities, that a traveler must look and listen, is one that especially applies to a case of this kind."

*Malott* v. *Hawkins,* 159 Ind. 127, and cases cited. See, also, *Pittsburgh, etc., R. Co.* v. *West,* 34 Ind. App. —, 69 N. E. 1017; *Cleveland, etc., R. Co.* v. *Coffin,* 30 Ind. App. 462.

Was the injury by appellant wilful? *Indiana, etc., R. Co.* v. *Trinosky,* 32 Ind. App. 113. In *Louisville, etc., R. Co.* v. *Bryan,* 107 Ind. 51, the court say: "To constitute a wilful injury, the act which produced it must have been intentional, or must have been done under such circumstances as evinced a reckless disregard for the safety of others, and a willingness to inflict the injury complained of."

In *Belt R., etc., Co.* v. *Mann,* 107 Ind. 89, it is said: "It is beyond question that to entitle one to recover for an injury to which his own negligence may have contributed, the injurious act or omission must have been purposely and intentionally committed, with a design to produce injury, or it must have been so committed under such circumstances as that its natural and probable consequence would be to produce injury to others. There must have been either an actual or constructive intent to commit the injury." It has frequently been said to involve conduct which is *quasi* criminal. *Parker* v. *Pennsylvania Co.,* 134 Ind. 673, 23 L. R. A. 552, and cases cited; *Dull* v. *Cleveland, etc., R. Co.,* 21 Ind. App. 571.

The intentional omission to perform a duty, or the intentional doing of an act contrary to duty, although culpable and resulting in injury, falls short of showing that the injury was intentionally, wantonly inflicted. "Unless there was a purpose to inflict the injury, it can not be said to have been intentionally done; and unless an-act is done, or omitted to be done, under circumstances and conditions known to the person, that his conduct is likely to, or probably will result in injury, and through reckless indifference to consequences, he consciously and intentionally does a wrongful act, or omits an act, the injury can not be said to be wantonly inflicted." *Memphis, etc., R. Co.* v. *Mar-*

*tin,* 117 Ala. 367, 23 South. 231. The quality of wilful-
ness is more than mere inadvertence or ignorance or uncon-
sciousness of the danger to the plaintiff. It must show an
indifference to his fate. *Georgia Pac. R. Co. v. Lee,* 92 Ala.
262, 9 South. 230; *Highland Ave., etc., R. Co. v. Swope,*
115 Ala. 287, 22 South. 174. It has been held that wil-
fulness is not shown by the mere failure of a railroad com-
pany to comply with the requirements of a statute as to
blowing the whistle or ringing the bell at short intervals
while moving through the limits of an incorporated town
or city. *Savannah, etc., R. Co. v. Meadors,* 95 Ala. 137,
10 South. 141. Nor is it shown where, after discovering
the peril of the person, the engineer adopts the means which
he believes to be best to stop the train. *Louisville, etc., R.
Co. v. Markee,* 103 Ala. 160, 15 South. 511, 49 Am. St. 21.

Conceding the negligence of the appellant as heretofore
set out, the evidence does not, in the light of the decisions,
show the wilful infliction of the injury upon appellee, nor
the wanton disregard of life by the servants of appellant.
There is no conflict in the evidence pertinent to the ques-
tion of wilfulness, and it is therefore for the decision of
the court.

A review of the evidence would serve no useful purpose,
and the conclusion reached renders it unnecessary to pass
upon other alleged errors.

The judgment is reversed, with instructions to sustain
the motion for a new trial.