# Alabama Great Southern Railroad Co. v. Burgess.

*Action against a Railroad Company to recover Damages for Personal Injuries.*

1. *Action against a railroad company for negligence; sufficiency of complaint charging willful negligence; right of trespasser.*—In an action against a railroad company to recover damages for personal injuries a complaint which charges that the defendant, through its agent and servants "wantonly or intentionally * * * drove and propelled its engine and train upon and against the plaintiff," who was on the

[Alabama Great Southern Railroad Co. v. Burgess.]

defendant's track, causing the injuries complained of, is sufficient as charging willful or wanton negligence; and as to the sufficiency of the complaint, it is immaterial that it shows the plaintiff to have been a trespasser.

2. *Same; simple negligence.*—A count in a complaint against a railroad company for personal injuries which avers merely the failure to exercise reasonable care after discovery of the peril, so as to prevent the injury, charges simple negligence merely.

3. *What is willful and wanton negligence.*—To constitute willful and wanton negligence there must be a purpose or design to inflict the injury or a consciousness at the time, that the act done or omitted will probably or naturally result in injury.

4. *Action for injuries to person upon track; evidence of experiment.* In an action to recover for injuries inflicted by a railroad to one upon its track, evidence of an experiment made by witness so as to determine how far one could be seen from the point of injury, the experiment being made about a month after the injury, is not competent, though evidence of the physical and topographical facts surrounding the place of injury is competent.

5. *Cross-examination; interest of witness.*—In an action for personal injuries against a railroad company, it is competent, on cross-examination of plaintiff's father as a witness for plaintiff, to ask if he hasn't brought another suit for the same accident as administrator of his daughter against the defendant, since witness is pecuniarily interested in the result of such suit.

6. *Evidence; conclusion of witness inadmissible.*—On a trial of a suit against a railroad company to recover damages for personal injuries, which were inflicted by a passenger train on defendant's road running over plaintiff, the statement of a witness who was a passenger on said train that he knew the brake was applied just before the accident, because of the sudden stopping of the train, is inadmissible; such statement being a mere conclusion of the witness.

7. *Affirmative charge; when refused.*—Where there is a material conflict in the testimony, or different inferences may be fairly and reasonably drawn from undisputed testimony, neither party is entitled to the affirmative charge.

8. *Damages; physical suffering.*—When plaintiff, in an action for personal injuries, proves a right of recovery, the fact that the damages on account of physical pain can not be definitely measured by a money standard is no ground for denying pecuniary compensation.

9. *Contributory negligence; pleading.*—The failure to plead contributory negligence to a count charging simple negligence is a waiver of that defense.

10. *Trial and its incidents; appeal; bill of exceptions.*—The withdrawal of counts of a complaint should, upon appeal, appear by an entry upon the record proper, and not be left to be shown only by the bill of exceptions.

[Alabama Great Southern Railroad Co. v. Burgess.]

APPEAL from the Circuit Court of Etowah.

Tried before the Hon. JAMES J. BANKS.

On October 12, 1894, the appellee, Telly John Burgess, who sues by his next friend, L. F. Burgess, brought the present action against the appellant, the Alabama Great Southern Railroad Company, to recover damages for personal injuries.

The complaint as filed contained six counts; but, as is stated in the opinion, the cause was tried upon the second and fifth counts of the complaint, which were as follows: "2. Plaintiff claims of the defendant twenty-five thousand dollars as damages, for that defendant on or about the — day of August, 1894, was engaged in the business of a common carrier of passengers, propelling cars by steam, in Etowah county, Alabama, and then and there wantonly or intentionally, through its agents and servants, drove and propelled its engine and train upon and against plaintiff in said county, who was then and there a minor between seven and eight years of age, knocking him down and fracturing his skull and otherwise wounding and injuring him to his great damage as aforesaid; hence this suit."

"5. Plaintiff claims of defendant twenty-five thousand dollars as damages, for that whereas on or about the — day of August, 1894, defendant was engaged in the business of a common carrier of passengers in Etowah county, Alabama, propelling cars by steam, and whilst so engaged as such common carrier the servants and agents of defendant in charge of the train of defendant, after discovering that plaintiff was in danger of injury, failed to exercise due care and diligence to avoid his injury, when the exercise of such care and diligence might have avoided his injury, whereby plaintiff became and was injured by the train of defendant knocking him down and fracturing his skull, and otherwise injuring and wounding him, and such injuries resulted from defendant's failure to use due care and diligence to avoid injuring him, after defendant's agents and servants knew plaintiff's peril as aforesaid, when such care and diligence might have avoided plaintiff's injuries, and such injuries occurred in Etowah county, Alabama."

To the second count the defendant demurred upon the following grounds: "First. Said count shows on its face that plaintiff was a trespasser on defendant's track,

and failed to aver that the injury was wantonly, willfully or intentionally inflicted. Second. Said count fails to account for the presence of plaintiff on the track, and fails to show that the injury was wantonly, willfully or intentionally inflicted. Third. Said count fails to show that plaintiff was a passenger, an employè, or sustained any relation to defendant other than a tresspasser on its track, and also fails to show that the injury was wantonly, willfully or intentionally inflicted."

To the fifth count, the defendant demurred upon the following grounds: "1. Said count shows on its face that plaintiff was a trespasser and fails to show that the injuries were wantonly, intentionally or willfully inflicted. 2. The averments in the fifth count that the servants and agents of defendant, after discovering that plaintiff was in danger of injury, failed to exercise due care and diligence to avoid his injury, when the exercise of such care and diligence might have avoided his injury, and that plaintiff's injuries resulted from defendant's failure to use due care and diligence to avoid injuring him after defendant's agents and servants knew plaintiff's peril as aforesaid, are not the equivalent of an averment that the injuries were wantonly, willfully or intentionally inflicted. 3. Said count makes out only a case of simple negligence, and does not amount to a charge of wanton, willful or intentional negligence. 4. Said count fails to contain any statement of facts from which any duty to plaintiff originated. 5. Said count fails to show in what respect defendant failed to exercise due care and diligence to avoid the injury. 6. Said count is too uncertain, vague and indefinite in its allegations of negligence. 7. Said count fails to state sufficient facts in regard to the happening of the alleged injury. 8. Said count fails to show what agent or servants of defendant failed to use due care and diligence. 9. Said count fails to aver that the agents and servants, who are alleged to have failed to use due care and diligence, were the agents and servants in charge of the engine and train."

The demurrers to each of these counts, respectively, were overruled, to which ruling the defendant separately excepted.

The cause was tried upon the plea of the general issue interposed to these two counts. The facts, as pertaining

to the rulings of the court upon the evidence, and the other material facts of the case are sufficiently stated in the opinion.

Upon the introduction of all the evidence, the court at the request of the plaintiff gave to the jury the following written charges, to the giving of each of which the defendant separately excepted :   (1.) "The court charges the jury that the impossibility of definitely measuring the damages by a money standard, when pain is claimed as an element of damages, is no ground for denying pecuniary relief, if the jury believe plaintiff is entitled to recover in this case."   (2.) "The court charges the jury that in this case all that is meant by wanton, intentional or willful negligence is the failure on the part of the defendant to use due care under the circumstances to avoid the injury, after discovering plaintiff's peril."   (3.) "The court charges the jury that although plaintiff was himself negligent or at any improper place when he was struck by the train, yet, if the engineer saw the plaintiff's peril in time to stop the train, and could have stopped it by the use of due care before plaintiff was struck, and failed to do so, and plaintiff was struck by the train and injured, defendant would be liable, and the jury should find for the plaintiff such damages as they think he is entitled to recover, not exceeding $25,000."   (4.) "The court charges the jury that if they are reasonably satisfied from the evidence that the engineer saw the child on the track and saw that he was in peril, in time to avoid injuring him, by the exercise of reasonable diligence, and they further believe that the engineer failed to exercise such reasonable diligence to avoid injury to the plaintiff, such failure would be wanton negligence, and the plaintiff would be entitled to recover such damages as the jury think he is entitled to recover in this case, not exceeding $25,000, if the jury believe plaintiff was injured by the failure to use reasonable diligence to avoid plaintiff's injury."   (5.) "The court charges the jury that although the plaintiff was himself negligent or at an improper place when he was struck by the train, yet if the engineer saw the plaintiff's peril in time to stop the train, and could have stopped it by the use of reasonable care before plaintiff was struck, and failed to do so, and plaintiff was struck by the train and injured, defendant would be liable, and the

[Alabama Great Southern Railroad Co. v. Burgess.]

jury should find for the plaintiff such damages as they think he is entitled to recover, not exceeding $25.000."

The defendant requested the court to give to the jury the general affirmative charge in its behalf, and duly excepted to the court's refusal to give said charge as asked. There were verdict and judgment for the plaintiff, assessing his damages at $3,000. There was a motion made by the defendant for a new trial, assigning as grounds thereof the several rulings of the trial court to which exceptions had been reserved, and further, that the verdict was contrary to the evidence, and that the damages awarded were excessive. This motion was overruled, and the defendant duly excepted. The defendant appeals, and assigns as error the several rulings of the trial court to which exceptions were reserved.

GOODHUE & SIBERT, for appellant.—1. To sustain the charge of wanton, willful or intentional negligence, there must be evidence tending to show such negligence " as implies a willingness or a purpose to inflict the injury complained of—a consciousness that the unwarranted conduct will inevitably or probably lead to wrong and injury."—*K. C., M. & B. R. R. Co. v. Crocker*, 95 Ala. 433 ; *G. P. R. Co. v. Lee*, 92 Ala. 262 ; *L. & N. R. R. Co. v. Markee*, 103 Ala. 160.

2. The evidence as to the experiments which were made by the father of the plaintiff were inadmissible.— *Ga. Pac. R. Co. v. Ross*, 100 Ala. 492 ; *Tesney v. State*, 77 Ala. 38 ; *A. G. S. R. R. Co. v. Collier*, 112 Ala. 681. Only when made under similar conditions and like circumstances to those existing in the case at issue are experiments out of court ever admissible.—*St. L. & P. R. R. Co. v. Champion*, 23 L. R. A. 861, 36 N. E. Rep. 222 ; *Leonard v. Soutmer P. R. R. Co.*, 14 L. R. A. 221 ; *Burg v. C., R. I. & P. R. Co.*, 57 N. W. Rep. 682 ; *Klmaonowski v. R. R. Co.*, 31 N. W. Rep. 275 ; *R. R. Co. v. Mugg*, 31 N. E. Rep. 564.

3. The testimony of the witness who was a passenger on the train, that he knew the brakes were put on because of the sudden stopping of the train was inadmissible.—*Alley v. Daniel*, 75 Ala. 409.

4. Charge two, given at the request of the plaintiff, was erroneous. It does not properly define wanton, willful or intentional negligence. The question as to

[Alabama Great Southern Railroad Co. v. Burgess.]

whether the defendant is or is not guilty of willful, wanton or intentional negligence does not depend altogether on the fact that negligence occurred after the discovery of the peril. We submit that it cannot be said that every failure on the part of an engineer to use due care after discovery of peril constitutes wanton, intentional or willful negligence. An engineer might, after discovery of peril, fail to use some means of prevention in his power which might in the eyes of the law constitute negligence without being guilty of that recklessness or wantonness, or worse, which implies a willingness to inflict the impending injury, or a willfulness in pursuing a course of conduct which will naturally or probably result in disaster, or an intent to perpetrate wrong.—*Georgia Pacific Railway Co. v. Lee*, 92 Ala. 270; *L. & N. R. R. Co. v. Markee*, 103 Ala. 160. Wanton, willful or intentional negligence is such as implies a willingness or a purpose to inflict the injury complained of— a consciousness that the unwarranted conduct will inevitably or probably lead to wrong or injury.—*K. C., M. & B. R. R. Co. v. Crocker*, 95 Ala. 433.

DORTCH & MARTIN, *contra.*—The testimony as to how far the plaintiff could have been seen by the engineer, and the experiment in reference thereto, as testified to by the plaintiff's father, were admissible in evidence.— *A. G. S. R. R. Co. v. Linn*, 103 Ala. 139; *McCreary v. Turk*, 29 Ala. 245; *S. &. N. Ala. R. R. Co. v. McLendon*, 63 Ala. 276; *Barker v. Coleman*, 35 Ala. 225; *Stone v. Watson*, 37 Ala. 288.

The general affirmative charge requested by the defendant was properly refused. There were different inferences which could have been drawn from the evidence by the jury. The charges requested by the plaintiff were properly given.—*L. & N. R. R. Co. v. Watson*, 90 Ala. 69; *L. & N. R. R. Co. v. Black*, 89 Ala. 317; *Stringer v. Ala. Min. R. R. Co.*, 99 Ala. 410; *Tanner v. L. & N. R. R. Co.*, 60 Ala. 621; *L. & N. R. R. Co. v. Markee*, 103 Ala. 171; *Ga. Pac. R. Co. v. Ross*, 100 Ala. 492. Charge No. 1 is good.—*Mayor &c. v. Lewis*, 92 Ala. 357.

HEAD, J.—Action against the Railroad Company for personal injuries. The case was tried upon the general issue to the second and fifth counts of the complaint—

38

the other counts having been withdrawn, which carried with them, of course, the special pleas which were directed to those counts only. No special pleas were filed to the second and fifth counts.

There was no merit in the demurrers to these two counts. The second shows sufficiently that the defendant's servants or agents committed the injury wantonly, willfully or intentionally; hence it is not material that it also shows that plaintiff was wrongfully on the track.

The fifth was, apparently, treated, on the trial below, as being of the same character, and there are expressions in many of our decisions, importing that such wrongdoing as is charged in this count against the servants of the defendant company, in operating the train, is the equivalent of wanton or willful misconduct, and the rulings of the court below were no doubt influenced by these expressions, but upon examination of several of our recent rulings, the principle will be found to have been declared that to constitute wantonness or willfulness on the part of the servants, in their omissions to use proper preventive effort after discovery of the peril, they must have been conscious, at the time, that they were omitting to use the means at hand which the circumstances reasonably required to avert the injury. The omissions may have resulted from the want of skill, or other unintentional causes, which, in law, would have constituted negligence, or a want of due care, yet exculpating the servants from that conscious or intentional wrong which is equal to wantonness or willfulness.—*G. P. Railway Co. v. Lee*, 92 Ala. 262; *L. & N. R. R. Co. v. Markee*, 103 Ala. 160. This count only charges the failure to exercise due and reasonable care, after the discovery of the peril, which, in view of the principle above stated, is no more than a charge of negligence. The count is good, as one charging negligence merely. It must be observed, however, that under the count, as framed, proof must be confined to the inquiry whether there was a failure to exercise due and reasonable care, *after discovery of the plaintiff's peril*; that being the character of negligence charged.

It results from what we have said, that charges 2 and 4, requested by the plaintiff, were improperly given.

It was not denied that one of the defendant's trains ran over and injured the plaintiff; thus the only contro-

[Alabama Great Southern Railroad Co. v. Burgess.]

verted question for the jury to determine under the second count was whether the defendant's agents wantonly, willfully or intentionally did the injury; or to state it in another form, as applicable to the evidence in the case, whether they discovered the peril the plaintiff was in, in time to avert it by the due and reasonable use of the means within their control, which, with that consciousness which we have defined as necessary to wantonness or willfulness, they failed to use.

Under the fifth count, as we have said, the issue involved simple negligence merely, raising only the question whether the servants used due and reasonable care to avert the injury after discovery of the plaintiff's peril, the use of which would have prevented the injury. There was no plea of contributory negligence to this count, so that the question whether plaintiff was rightfully or wrongfully on the track does not arise.

The plaintiff, when injured, was about nine years of age. His little sister, three years of age, was with him and was killed.

It became a question on the trial, how far from the place of injury, (which was identified by testimony as being on or near the end of a certain trestle), these children could be seen on the track, and recognized as being children, from the direction the train came. The plaintiff's father was permitted to testify to an experiment made by him and others about a month after the injury. They placed the little boy (plaintiff) and one of witness' little girls, a size larger than the one that was killed, on the trestle and left a boy 17 years old with them, and went down the track 700 yards, and from that point they could see objects on the trestle. They then walked toward them 200 yards, and stopped, and there saw the two children on the trestle; and the witness testified that he could tell that they were children a distance of 500 yards. The other persons who were with the witness, testified to substantially the same. This testimony, and the questions which brought it out, were objected to on the grounds, that they were irrelevant, and that the experiment was made out of court, when defendant was not present, and because the conditions were not shown to be the same as on the occasion of the accident. Exceptions were duly reserved to the overruling of these objections.

We think, in connection with the other evidence, to which reference will be made, it was relevant to show how far the children who were injured, could have been seen by the engineer, and by him ascertained to have been children. It is true that mere negligence, on his part, in failing to· discover them, or any other negligence of whatever character, which did not involve actual knowledge on the part of the engineer, of the plaintiff's peril, in time to avoid the injury, would give no right of recovery by the plaintiff, *under the peculiar issues of this cause*; but if there was other evidence tending to show knowledge of such peril by him, it was competent, in aid of that evidence, to show that the conditions were such that the peril might have been discovered in time to avert the injury ; and it is to be supposed the 'trial court would give the jury fully to understand, the legal scope and purpose of the evidence and did not suffer them to make mere negligence, in not discovering the peril, or otherwise, the basis of a recovery by the plaintiff, except the negligent failure, if there was such, to use the means at hand, after actual discovery of the peril.

The writer was disposed to think the experiment, the evidence of which is objected to, could safely and properly be regarded as a practical method of shedding some legitimate light upon the inquiry whether or not these children, and the fact that they were children, could have been discovered by the engineer in time to stop the train before reaching them by the exercise of due and reasonable care, leaving to the jury to consider such differences of conditions, under which the injury and experiment occurred, as the case may disclose, and to make due allowances for such differences ; but, upon due consideration, we are of opinion that such evidence will not furnish, or aid in furnishing, a safe guide to the jury in the determination of the question whether the engineer exercised reasonable care to prevent the injury, after he discovered the plaintiff's peril, or even before such discovery, if that were an issue in the cause. The conditions are too variant.—*Tesney v. The State*, 77 Ala. 33. The physical and topographical facts surrounding the injury, and the place of the injury, should be put before the jury, leaving them to draw just conclusions touching the issue.

The plaintiff's father, L. F. Burgess, testified for plaintiff in a number of material matters. On cross-examination, the defendant asked him: "Is there not another suit pending in this court brought against the A. G. S. R. R. Co. by you as the administrator of your little girl for her killing which occurred on same occasion?" Plaintiff objected on the ground that it was immaterial and irrelevant. If there was such a suit pending, one-half of any recovery which might be had in the action would go to the witness, under the statute of distributions.—Acts, 1890–91, p. 267. The facts of the two cases were necessarily identical. If the defendant was guilty in the one case, it was necessarily, as matter of fact, guilty in the other, though, it is true, the disposition of the one would, legally, exert no influence on the other. Yet the witness had a pecuniary interest in the question of the defendant's guilt. It is a familiar principle that the interest of a witness in the success of the party for whom he testifies may be proven to show bias. Thus, relationship or close business association may be shown. We think the question ought to have been allowed. It was not necessary to introduce the record of the pending suit.

There was no error in excluding the statement of the witness, Cullen, who was a passenger on the train, that he knew that the brake was put on because of the sudden stopping of the train after the whistle was blown. He had already testified that the engine whistle was blown several times, in quick succession, and immediately following the blowing, the train began to slacken its speed so suddenly as to throw him forward in his seat, in the passenger coach. The statement excluded was the mere conclusion of the witness from these facts.

The remaining questions arise upon the giving and refusal of instructions, and motion for a new trial. The general charge was requested by the defendant, and its refusal is now earnestly insisted upon as error.

The testimony, additional to what has been indicated, necessary to be specially stated is, substantially, as follows: The injury was committed by a north bound passenger train running about 40 miles per hour, from three to four o'clock in the afternoon, on or near the north end of a trestle about 55 feet in length and 17 feet deep. About 270 yards south of the trestle there began

a railroad cut about 300 yards long, and a stock gap was located about 150 yards south of the north end of the trestle; about 410 yards south of the stock gap, the track was heavily down grade going north, and from the stock gap to the place of injury (about 150 yards), it was about level or a little up-grade. The road was straight and unobscured about 700 yards south of place of injury. There was no eye-witness to the accident except the plaintiff and the train-men. The plaintiff testified that at the time the train struck him he had just got off the trestle at the north end; that his little sister was along with him and was killed; that when he first saw the train he was on the trestle; that at the time the train struck him he was at the end of the tie pulling his sister off the track on the right hand side of the track going north; that when he first saw the train he told his sister, "yonder comes a train," and all he did was to try to get off; that when the train struck his sister she had one foot on each side of the rail, and he had hold of her trying to pull her off; that he was on the track all the time; that he was leading his sister and, after seeing the train, threw down a bundle which he had and took her in his arms, and after he got to the end of the trestle sat her down and caught hold of her to pull her off the rail; that he carried her about 10 or 12 steps; that he did not hear the train blow; heard it coming right at the mouth of the cut; did not try to get the bundle, nor stoop, nor sit down on the track, but kept walking.

Tiny Paine, a sister of plaintiff, testified that she was at her father's house the day of the accident, sitting in the hall, and saw the train pass, and heard it blow several times like there was something on the track; it blew just as it went out of her sight, which was at the south end of the cut; that they did not blow but just the one "spell of blowing," and it was about three o'clock in the afternoon. On cross-examination she stated that she was about a quarter of a mile from the train; that it blew just as the rear coach went into the cut out of her sight. Two other witnesses testified to hearing the whistle.

The foregoing comprehends the plaintiff's case.

The engineer testified for the defendant, that when he came into the cut, on the top of the hill, he saw something on the track but could not tell what it was, and

[Alabama Great Southern Railroad Co. v. Burgess.]

did not perceive that the objects were children until he got within 40 or 50 yards of them, when the little boy raised up on his feet, and he saw they were children on the track; that before that he could not tell that they were children; that as soon as he saw they were children he applied the brake and blew his whistle several times, in quick succession, and left nothing undone that he could have done to prevent the accident after he discovered they were children; that it was impossible to stop the train after he saw them, before reaching them; that the train ran by the place where the children were struck, about 150 yards; that after the injury the boy was lying on the right side of the track going north, and the girl on the same side, though one of her limbs was between the rails. He had her remains and the boy put into the train and carried back to Mr. Burgess' house. On cross-examination he testified, that he was looking down the track in the direction of the trestle, straight ahead of him, when he first came into the cut; that about the middle of the cut he saw an object on the trestle; at that time he was looking out of the cab window, right down the track, and continued to look at the objects on the trestle until he got within 40 or 50 yards of them, when he discovered they were children; that he first perceived that it was a human being when within 40 or 50 yards of it, when the little boy raised up. The plaintiff elicited from the witness that he had made the following statement to Vainy Burgess, and that it was about the way the accident occurred, viz.: "That when I came into that cut there at the top of the hill, I saw an object down on the track, and I couldn't tell what it was until I saw it begin to move a little bit, and then I took it to be bridge carpenters working down in between the ties digging out the dirt, and that it was their backs I could see moving, and I had not seen any caution signal or flagman, and I went on thinking they were bridge men until after this little boy raised up on his feet, and then I thought it was some boys daring me, and would then drop down in the trestle and let the train pass on." Witness stated that he frequently found carpenters repairing bridges and trestles just that way. He stated that it was impossible to stop the train within 100 yards. He made no effort to check the train until within 40 or 50 yards of the children.

The conductor testified that the whistle was blown about 100 yards from where the children were struck. A brakeman's testimony tended to show that the whistle blew about 300 yards from the trestle; that they ran about 50 yards past the children before they stopped. A number of witnesses corroborated the engineer as to the fact of blowing the whistle and sudden application of brakes and stoppage of the train.

This was the substance of the defendant's evidence. We think it is manifest, under the evidence, without entering upon a discussion of the reasons for the conclusion, that it was for the jury to infer at what point the engineer discovered the presence of the children on the track, and the peril they were in, and whether or not the exercise of due care on his part, after such discovery, would have avoided the plaintiff's injury, and hence, of course whether or not he exercised such due care. The court not being able to say that there was no evidence, at all, from which it might be legally inferred that the engineer was derelict in the respects mentioned, it necessarily falls within the province of the jury to draw the proper inference—that which the evidence, rationally and impartially considered and acted upon, reasonably induces the mind to draw. The general charge could not, therefore, have been properly given for either party.

We see no valid objection to the first charge given for the plaintiff.

We have already stated that charges 2 and 4 were improperly given.

As there was no plea of contributory negligence to the fifth count, we see no objection to charges numbered 3 and 5 given for plaintiff.

The withdrawal of the counts of the complaint to which we adverted, should have appeared by an entry upon the record proper, and not left to be shown only by the bill of exceptions as was done, and we will not be understood as holding that they and the pleas to them, with the rulings on both, are not now legally before us for review. We assume, however, that the omission will be supplied on another trial, and as the judgment must be reversed on other grounds, we have treated the case as if the proper entry had been made, and will not consider the questions raised on those counts.

[Hall & Farley, Trustees v. Henderson.]

For the errors mentioned the judgment is reversed and the cause remanded.

Reversed and remanded.